Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 816 | **DATE** | 3/29/2001 |
| **CASE TITLE** | Richard Brown vs. William A. Halter, Commissioner of Social Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff's Motion for Summary Judgment [9-1] is denied and Defendant's Motion for Summary Judgment is granted. Judgment is entered in favor of the Commissioner and against the Plaintiff.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | MAR 29 2001 date docketed | | 12 |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| KM | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICARD BROWN,<br><br>      Plaintiff,<br>   v.<br><br>WILLIAM A. HALTER[1],<br>Commissioner of Social Security,<br><br>      Defendant. | Case No. 00 C 816<br><br>Magistrate Judge Nolan<br><br>DOCKETED<br>MAR 2 9 2001 |

## MEMORANDUM OPINION AND ORDER

This is an action brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Ricard Brown's claim for social security disability insurance benefits. This matter is before the Court on the parties' Cross Motions for Summary Judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

### I. PROCEDURAL HISTORY

Mr. Brown filed an application for disability insurance benefits on March 12, 1996 alleging that he became disabled on June 2, 1994 as a result of a motor vehicle accident. (R. 179-81.) His claim was denied initially and on reconsideration. (R. 79-91.) On November 6, 1997, Mr. Brown

---

[1] William A. Halter is substituted for his predecessor, Kenneth S. Apfel, as Secretary of Health and Human Services pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

appeared with counsel and testified at an administrative hearing before Administrative Law Judge ("ALJ") Lyle Lipe. (R. 29-78.) Randall Strahl testified as a vocational expert. (Id.) On February 13, 1998, ALJ Lipe issued a decision finding that Mr. Brown was not disabled because he could perform a significant number of jobs in the national economy. (R. 16-27.) On February 25, 1998, Mr. Brown filed a Request for Review. (R.13.) The Appeals Council denied Mr. Brown's Request for Review, on September 20, 1998, leaving the ALJ's decision as the final decision of the Commissioner. (R. 9.)

## II. FACTUAL BACKGROUND

### A. Background

Mr. Brown was born on September 14, 1961 and was thirty-six years old at the time of the ALJ's decision. (R. 106.) Mr. Brown has a high school education and his most recent employment, from 1987 to 1994, was as a truck driver. (R. 139.) Prior to working as a truck driver, Mr. Brown worked as a stockman, and before that he was in the United States Army. (Id.)

### B. Medical Evidence and Testimony

#### 1. Medical Evidence

On June 2, 1994, Mr. Brown was in an accident in his truck, and was admitted to the hospital complaining of chest, abdominal, neck, and lower leg pain. (R. 179.) The x-rays did not show there to be any acute injuries to Mr. Brown, however the x-ray of his lower back did indicate some degeneration of two intervertebral discs. (R. 182-84, 186.) Computerized tomography (CT) scans of Mr. Brown's abdomen and cervical spine did not exhibit any substantial abnormalities. (R. 185.)

On June 7, 1994, Dr. Reddy[2] examined Mr. Brown for the cause of his complaints of pain in various parts of his body. (R. 293.) Dr. Reddy diagnosed Mr. Brown with a sprained dorsal and lumbosacral spine, contusions and abrasions and possible internal derangement of the right knee, a sprained left ankle, and contusions on the left leg. (R. 294.) On July 5, 1994 a magnetic resonance imaging (MRI) scan of Mr. Brown's right knee indicated minimal joint effusion and no other abnormalities. (R. 299.) An MRI scan of Mr. Brown's lumbar spine, taken August 22, 1994, indicated a small, right-sided disc herniation at L5-S1. (R. 192.)

On November 9, 1994, Mr. Brown was examined at Hinsdale Orthopedic Associates because of right-sided flank pain which radiated down to his lower extremities. (R. 194.) This examination indicated that Mr. Brown was able to sit comfortably, and that he was able to walk unaided by his crutch without a limp. (Id.) There was no evidence of fasciculation or atrophy in the upper or lower extremities. (Id.) He had normal motor power, and there was no evidence of ulceration or injury in the lower extremity. (Id.) The flexation and extension x-ray showed excellent alignment of the vertebra with no abnormalities or slippage. (Id.) Dr. Reddy also noted the Mr. Brown brought with him a previous MRI which showed excellent disc hydration in all discs except for L5 which showed early mild degenerative changes, but no disc herniation, no root impingement, and no stenosis. (Id.) The doctor summarized the MRI as "normal." (Id.) Mr. Brown complained of pain in his right knee, however, the examination did not reveal any abnormalities. (R. 195.)

Mr. Brown was diagnosed with a contusion of the back, and no surgical intervention was recommended based upon the normal examination and normal evaluation. (R. 195.) The doctor

---

[2] While some of the medical reports and documents in the record refer to Dr. Reddy as Dr. Nallapareddy, his own letterhead indicates his name to be Dr. Reddy. (R. 308.)

recommended that Mr. Brown engage in a work-hardening program for two weeks and then return to his regular job duties with no restrictions. (Id.) The doctor noted at the end of his report that Mr. Brown became "quite hostile" when told the MRI had revealed no disc herniation and requested that the MRI be reviewed in his presence. (Id.)

On December 8, 1994, Dr. Reddy indicated in a letter that Mr. Brown had a very small right-sided herniated disc which was improving with physical therapy. (R. 308.) He recommended continued physical therapy for his back. (Id.) The letter notes that Mr. Brown was continuing to have problems with his right knee. (Id.) The examination indicated constant clicking over the patellofemoral joint, range of motion about forty degrees of flexion, a thickened tender synovial band along the medial parapatellar region, and weak quadricep power. (Id.) The MRI on the right knee was negative, however, the letter notes that an MRI might not show some of the problems which would be picked up by arthroscopy of the knee. (Id.) He recommended arthroscopic surgery of the right knee as soon as possible, (R. 309.), and, on February 16, 1995, Dr. Reddy performed arthroscopic surgery on Mr. Brown's right knee. (R. 290-91.)

In early April 1995, Mr. Brown underwent a functional capacity evaluation to assess his ability to come back to work. (R. 196-218.) The rehabilitation specialist, Nancy Sons, found that Mr. Brown would be able to tolerate the work hardening program easily. (R. 196.) She found that his evaluation was performed in an exaggerated manner with high pain reports, non-anatomical pain drawings, and very exaggerated pain behaviors and postures. (Id.) She found his lifting capacity to be below light physical demands, but that he could "certainly upgrade to a greater lifting capacity and certainly a higher level of physical fitness without causing any injury to himself." (Id.)

On July 10, 1995, Mr. Brown was admitted to South Suburban Hospital with complaints of

lower back pain. (R. 224.) Dr. Patrick Sweeney, an orthopedic surgeon, performed surgery on Mr. Brown's back, and the diagnosis was discogenic pain in L4-5, L5, and S1, and central disc herniation in L5-S1. (R. 256-59.)

On February 6, 1996, Mr. Brown underwent another functional capacity assessment to determine his work level capabilities. (R. 261-69.) Sue Arends, a physical therapist, conducted the evaluation, and found that the results accurately reflected Mr. Brown's capabilities. (R. 261.) During the assessment, Mr. Brown demonstrated the ability to lift in the light work category at the above the shoulder and desk chair levels. (Id.) He was unable to perform a chair/floor lift. (Id.) He was able to crawl and kneel, but the assessment recommended that he only perform those activities on an occasional basis. (Id.) He demonstrated a forty-five minute sitting tolerance, and a sixty minute standing tolerance. (Id.) He did not demonstrate any difficulties with walking. (Id.) The assessment recommended that Mr. Brown perform work in the light work category at the above shoulder and desk/chair levels only. (R. 262.) Sitting and standing durations should be limited to forty-five and sixty minute durations respectively. (Id.) Dr. Sweeney released Mr. Brown to work on February 12, 1996, pursuant to the restrictions in the February 5, 1996 functional capacity evaluation. (R. 260.)

On April 17, 1996, Dr. Sweeney reported to the Bureau of Disability Determination Services that Mr. Brown could walk unassisted and that he had slightly reduced range of motion in his lumbosacral spine. (R. 316-17) He also indicated in his report that Mr. Brown could sit for periods of forty-five minutes, stand for periods of sixty minutes, lift twenty pounds or less, carry forty pounds or less, and that he was not able to lift objects from below the waist. (Id.)

In November 1996, Dr. Anthony Brown, an orthopedic surgeon, performed a consultative

-5-

exam of Mr. Brown at the request of the Bureau of Disability Determination Services. (R. 422-27.) Mr. Brown complained of pain in his cervical spine, limitation of motion, numbness in his hands, pain in his lower back, parathesias in the left leg, swelling of the feet, medial pain and swelling in his right knee, and a limp and difficulty navigating stairs due to his injuries in his right knee. (Id.) The doctor noted that Mr. Brown's medical history indicated him to be a diabetic, diagnosed in 1995. (Id.) The examination revealed moderately reduced motion of the cervical spine, normal range of motion in the shoulders, restricted motion in the lumbosacral spine, normal range of motion in the hips, and a normal gait. (R. 422-25.) The doctor's medical assessment made the following findings regarding Mr. Brown's capabilities: 1) he could sit for up to eight hours, 2) he could lift up to five pounds continuously, ten pounds frequently, and twenty pounds occasionally, 3) his carrying abilities were the same as his abilities to lift, 4) he could stand for four hours in an eight hour work day, 5) he could walk for four hours in an eight hour work day, 6) he could use both hands for repetitive action, 7) he had a total restriction from any bending, 8) he could not use his right foot for repetitive movement, but had no restrictions in his left foot, 9) he had a total restriction from working in unprotected heights, a mild restriction of driving automotive equipment, a moderate restriction of being around moving machinery, and 10) he could reach frequently, squat occasionally, and had a total restriction of crawling or climbing. (R. 426-27.)

On January 30, 1997, Dr. Sweeney wrote a letter which summarized his care of Mr. Brown. (R. 428.) In this letter, Dr. Sweeney described the initial accident which was the cause of his Mr. Brown's injuries, and the April 1995 surgery on Mr. Brown's back. (Id.) Dr. Sweeney's letter stated that after the surgery, Mr. Brown reported decreased pain and within six weeks after the surgery he was able to walk one mile. (R. 429.) In February 1996, Mr. Brown had progressed enough to return

to work in a light duty job, however, when he was seen on March 14, 1996, Mr. Brown reported that had not been able to return to work because the positions offered to him were not consistent with his limitations. (Id.) By July 12, 1996, Dr. Sweeney determined that Mr. Brown's x-rays indicated that his back was well-fused, but he still complained of occasional pain. (Id.) Dr. Sweeney determined that Mr. Brown was at that time functionally at a fairly high level, but Mr. Brown had frequent refills of medication. (Id.) Overall, Dr. Sweeney's impression was that the surgery was successful, and that Mr. Brown is able to work but at a lower capacity than before. (R. 430.)

In March 1997, Dr. Sweeney filled out a Physical Capacities Evaluation which stated that Mr. Brown had the following abilities and limitations: 1) he was able to occasionally lift thirty pounds and frequently lift twenty pounds, 2) he could walk a total of four hours a day, and stand without interruption for one hour, 3) he could sit uninterrupted for a total of 30-45 minutes up to a total of four hours of sitting in an eight hour workday, 4) he could never climb or balance, occasionally stoop, crouch, kneel, and crawl, and could frequently operate foot controls, reach above his shoulders, and perform gross and fine manipulations. (R. 431-32.) Dr. Sweeney found that Mr. Brown had limitations in reaching, pushing and pulling, and environmental restrictions in exposure to heights, moving machinery, temperature extremes, and vibrations. (R. 433.)

### 2. Mr. Brown's Testimony

At the time of the administrative hearing, Mr. Brown lived in Folsom, Louisiana. (R. 32.) He moved there in June 1997. (R. 38.) He was thirty-six at the time of the hearing. (R. 32.) He is 6' 3½", weighs 262 pounds, and is right-handed. (Id.) He is married and had three children, ages two, seven and fourteen. (R. 33.) Mr. Brown lives in a two story house, and he goes up and down the stairs four or five times a day. (R. 33-34.) Mr. Brown's wife is on welfare, and used to draw

income from workman's compensation until March or 1996. (R. 36-37.) Mr. Brown is a diabetic and takes glucose. (R. 40-41.) He also takes Ibuprofen on a regular basis, and a muscle relaxer called Flexeril. (R. 41-42.) Mr. Brown also has Bell's Palsy which affects his ability to talk and his vision in his left eye. (R. 51.)

Mr. Brown's last job was with Snider Carrier Company which ended in June 1994 as a result of his accident. (R. 39.) He tried working for Snider after his accident on a part-time basis in a job which involved checking people in and out of gates and checking fuel pumps, however it did not work out. (R. 39-40.)

Mr. Brown testified that he feels he is disabled because he has pain all over his body, with the most severe pains in his legs and back. (R. 43.) The pains in his legs travel from his thighs to the tops of his feet. (R. 46.) He has that pain five to six times a day, and it lasts approximately one minute. (R. 47.) The pain is triggered from sitting too long, walking around too much, bending, or standing for long periods of time. (Id.) Mr. Brown also has difficulty walking, and walks with a limp. (R. 52.) He has sought treatment from a Dr. Cora in Louisiana for his pain, however, he has not had any surgery in Louisiana, nor has he had physical therapy. (R. 44-45.) He does do exercises on his own, however. (R. 45.)

Mr. Brown testified that he does not sleep well, and that during a period of eight and one-half to nine hours, he only gets around four hours of sleep. (R. 48.) He sleeps only a couple of hours at a time. (R. 49.) During the day, he eats, watches television, takes walks, helps his wife with groceries, helps his wife watch their two-year old, and helps his children with their homework. (R. 49-51.) When he takes a walk, he walks approximately one mile at a normal to slow pace. (R. 60.) He also occasionally visits his mother, who also lives in Louisiana. (R. 52.) Occasionally, the

Browns have visitors, however, Mr. Brown does not usually talk with them. (R. 53.) Other activities Mr. Brown engages in are to read the Bible and the Wall Street Journal, occasionally attend school functions, and help his wife with the laundry. (R. 54-56.) Mr. Brown's wife does not work, so she is at home most of the time. (R. 50.)

Mr. Brown has a driver's license and drives approximately fifty to sixty miles per week. (R. 57.) He usually drives to go to the grocery store or to visit his mother. (Id.) He takes care of his own personal grooming and usually dresses himself, although his son sometimes helps him with his socks. (R. 58.)

Mr. Brown testified that he can only sit comfortably for twenty to twenty-five minutes, reaching over his head is difficult, he cannot bend or stoop very easily, and he cannot crawl.(R. 60-63.) He is able to make a fist and is able to pinch his fingers and thumbs together. (R. 60, 62.)

## C. The Vocational Expert's Testimony

The vocational expert testified as follows at the November 1997 hearing. He was first asked to assume a thirty-two to thirty-six year old person with a high school education with the same work history as Mr. Brown's and an exertional capacity with limited to a full range of light work with the following exceptions. (R. 68.) The person may stand or walk for sixty minutes without interruption for a total of four hours in an eight hour work day. The person can sit for thirty to forty-five minutes without interruption for a total of fours hours in an eight hour work day. The person can never climb or balance, and may only occasionally stoop, crouch, kneel, or crawl. The person can only occasionally perform expended position reaching and pushing or pulling with the arms and legs. The person must also avoid temperature extremes, vibrations, and working at heights or around moving machinery. (Id.) The vocational expert testified that such a person would not be able to perform any

-9-

skilled or semi-skilled jobs, but that there would be jobs at the light or sedentary exertional level such a person could perform. (Id.) These positions at the unskilled light level included cashier (900 jobs), inspector grader sorter (1200 jobs), and at the sedentary level included a sorter inspector (500 jobs), a ticket seller (700 jobs), and charge account clerk (500 jobs). (R. 68-69.) The vocational expert testified that a complete restriction from crawling or climbing would not change the answer to the previous hypothetical. (R. 69.)

The ALJ next changed the facts slightly and asked the vocational expert to assume the same facts in the first hypothetical including the complete restrictions from crawling or climbing, and to add that person had the extra restriction of being unable to perform jobs requiring clear speech, and the person must avoid extended position reaching and pulling and pushing with arms and legs. (R. 69.) The vocational expert replied that this person would still be able to perform the inspection job and the sorter job. (R. 70.) The additional restriction of having limited vision in one eye did not affect the vocational expert's answer. (Id.)

Mr. Brown's attorney asked the vocational expert to assume all the facts from the last hypothetical, and add the following restrictions. The person can lift five pounds maximum continuously and ten pounds frequently, can do no repetitive work with the right foot, and has restricted driving. (R. 71.) The vocational expert testified that this would eliminate the light inspection position but that the person could still perform the sorting position. (Id.) The vocational expert also testified that if a person were limited from reaching in front of his body because repetitive reaching would create pain, that person would not be qualified for the sorting job. (R. 73.)

**D. The ALJ's Decision**

ALJ Lipe made the following findings in his decision issued on February 13, 1998. He found

that Mr. Brown had not engaged in substantial gainful activity since June 2, 1994. (R. 26.) He found that the medical evidence established that Mr. Brown has the following impairments: residuals from lumbosacral diskectomy and fusion, secondary to degenerative disk disease and central disk herniation at L5-S1, and that Mr. Brown had an impairment which was "severe' within the meaning of the Social Security Act. (Id.) The ALJ determined that Mr. Brown did not have an impairment which meets or is equivalent to the Listing of Impairment. (Id.) He found that Mr. Brown's description of the nature and degree of his impairments is not supported by the medical and other evidence, and therefore, not completely credible. (Id.) ALJ Lipe decided that Mr. Brown had the residual functional capacity to perform the physical exertional and nonexertional requirements of light work with the exception of:

> not lifting/carrying over 20 pounds occasionally and 10 pounds frequently; and the nonexertional restrictions of standing/walking for 60 minutes without interruption for a total of four hours out of any 8-hour workday; sitting for 30-45 minutes without interruption for a total of 4 hours; never climbing or balancing and only occasionally performing extended position reaching and pushing/pulling with arms and legs; and need to avoid temperature extremes, vibrations, working at heights and working around moving machinery.

(Id.)

Based upon his findings regarding Mr. Brown's residual functional capacity, the ALJ determined that he was unable to perform his past relevant work, and that he has the functional capacity for the full range of light work, reduced by the nonexertional limitations previously listed. (R. 26.) Noting that Mr. Brown's age on June 2, 1994 was thirty-two years old and that he has a high school education, the ALJ found that "section 404.1569 of Regulations No. 4 and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled." (R. 27.) The ALJ determined that: "Although the claimant cannot perform the full range of light

-11-

work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform." (Id.) The ALJ concluded by ruling that the claimant has not been under a disability, as defined by the Social Security Act, at any time from June 2, 1994 through the date of his decision. (Id.)

## III. DISCUSSION

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order:

1. Is the claimant presently unemployed?

2. Is the claimant's impairment severe?

3. Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. Id. The claimant bears the burden of proof at steps 1-4. Id. Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. Id.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998).

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence means "'more than a mere scintilla'" of proof, instead requiring "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Ehrhart v. Secretary of Health & Human Services, 969 F.2d 534, 538 (7th Cir. 1992) (citations omitted).

Mr. Brown raises one main argument in support of his appeal: that the ALJ's finding is not supported by substantial evidence because he failed to separately consider whether Mr. Brown was disabled during the time period before and just after Mr. Brown had surgery. Mr. Brown asserts that the ALJ's opinion primarily adopted Dr. Sweeney's March 1997 opinion as his residual functional capacity finding for the entire time period, and failed to take into account that Dr. Sweeney's opinion was based on the results of the July 1995 surgery. (Pl.'s Mot. Summ. J. at 4.) Mr. Brown argues that since his injuries date back to June 2, 1994, the whole period from June 1994 and after is at issue, and the ALJ mistakenly relied only upon medical evidence dating from after the surgery. As a claimant who is otherwise entitled to benefits may retroactively receive the benefits for up to twelve months prior to the filing date, 20 C.F.R. § 404.621(a)(1)(i), Mr. Brown argues that he is entitled to

-13-

receive benefits from February 1995 through at least three months after his July 1995 surgery, or October 1995.³

Mr. Brown has cited to no case or statutory authority which supports his contention that, because a claimant may be entitled to retroactive benefits, an ALJ is required to assess whether a claimant was disabled at any point in time during that twelve month retroactive period. The Court has similarly failed to find any authority for this unique interpretation of 20 C.F.R. § 404.621(a)(1)(i). This argument, if carried to its extreme, would require the ALJ to make separate findings for every small fluctuation in the claimant's health during the twelve months prior to his application. There is nothing in the case authority, the regulations, or the Social Security Act itself which requires anything other than a review of the entire medical record to prepare a current assessment of the claimant's disabilities and their impact on his ability to work.

Moreover, it is this Court's view that a finding of disability is required before the twelve month retroactive period is even applicable. In White v. Sullivan, 965 F.2d 133 (7th Cir. 1992), the Seventh Circuit described the purpose of 20 C.F.R. § 404.621(a)(1) as follows: "Once the effective [date of application] is determined, a claimant *entitled to benefits* may receive the benefits for up to twelve months preceding the filing date." Id. at 135 n.1 (emphasis added). The district court in the same case, White v. Sullivan, 1991 WL 70967 (N.D. Ill. May 1, 1991), made the statement that 20 C.F.R. § 404.621(a)(1) "provides that an applicant may receive retroactive benefits for up to twelve

---

³ This is the only basis for appeal which Mr. Brown develops in his briefs. While Mr. Brown states in his Motion for Summary Judgment that he does not concede that he was not disabled for a much longer period of time, (Pl.'s Mot. Summ. J. at 5), he makes no arguments in support of his view that the ALJ erred in determining that he is not presently disabled. Therefore, this Court is only examining the narrow issue of whether ALJ Lipe erred by failing to separately assess Mr. Brown's condition prior to the July 1995 surgery.

months prior to the date of filing of an application *if the applicant is otherwise eligible.*" Id. at *2 (emphasis added). The language in these cases indicates that a finding of a current disability is a prerequisite to awarding retroactive benefits, and would seem to run counter to Mr. Brown's argument that this retroactive period requires a running assessment of whether the claimant was disabled at any point during the twelve months prior to the application. Therefore, the Court finds that Mr. Brown's interpretation of 20 C.F.R. § 404.621(a)(1) is without authority, and that the ALJ was not required to make a separate finding assessing Mr. Brown's residual functional capacity prior to his surgery.

Mr. Brown's more general objections assert that the ALJ failed to consider all of the pre-surgery evidence in determining his residual functional capacity in step four of his analysis. An ALJ is not required to discuss every piece of evidence but must only minimally articulate his reasoning. Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required. Id. at 307 (citing Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994)). In the present case in making his residual functional capacity determination, ALJ Lipe sufficiently articulated his assessment of the evidence and specifically considered and weighed the favorable evidence. Mr. Brown's assertion that he failed to consider any of the pre-surgery medical evidence is simply without any basis in fact. ALJ Lipe summarized Mr. Brown's entire medical history in his opinion, from the June 2, 1994 accident through Dr. Sweeney's 1997 physical capacities evaluation. (R. 18-23.) The ALJ's summary of Mr. Brown's medical history suggests that he studied and weighed all of that evidence when assessing residual functional capacity even though he did not specifically mention all of this history when he determined that Mr. Brown was capable of performing a full range of light work. (R. 23.)

Furthermore, while the ALJ did specifically credit Dr. Sweeney's March 7, 1997 physical capacities evaluation (a post-surgery evaluation) in determining Mr. Brown's residual functional capacity and in posing hypothetical questions to the vocational expert, (R. 25), his analysis did not end there. The ALJ first described the initial hypothetical given to the vocational expert which was based on Dr. Sweeney's March 1997 evaluation, and which formed the basis of the ALJ's determination that Mr. Brown could perform work as a cashier, inspector/grader/sorter, ticket taker, and charge account clerk (which provided a total of 38,000 jobs in the Chicago Metropolitan Area). (R. 24.)[4] However, ALJ Lipe went on to describe the many variations on the hypothetical which were put to the vocational expert which ultimately incorporated all of the previous limitations taken from Dr. Sweeney's 1997 assessment and added: total restriction from crawling or climbing, inability to perform jobs requiring clear speech, limited ability to reach, push, or pull, limited vision in one eye, and a lifting limit of ten pounds.[5] (R. 25.) The ALJ noted that even with all of these restrictions, the vocational expert still maintained that Mr. Brown would be able to perform

---

[4] Although at the time of the hearing Mr. Brown was living in Louisiana, he did not at the time, nor is he now, challenging the vocational expert's use of Chicago area as the geographical base of his findings. The ALJ pointed out in his opinion that Mr. Brown did not request a change in the location of his hearing, that he voluntarily participated in the hearing with his counsel from Chicago, and that he did not list a Louisiana address with the agency, and concluded that his stay in Louisiana was temporary. (R. 24.) The ALJ further observed that the vocational expert stated that jobs would be found in similar concentrations throughout the United States, and that Mr. Brown lived near New Orleans which is a large center of population. (R. 24-25.) The Court notes that the ALJ's determination in Step Five should focus on whether work exists in the national economy, which occurs when there is work in significant quantities either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. § 404.1565(a).

[5] This last question which limited the lifting ability to ten pounds was posed by counsel, and would eliminate all but sedentary work, however, the ALJ noted that Mr. Brown stated at the hearing that he could lift ten to fifteen pounds, and therefore found this limitation was not supported by the evidence. (R. 25.)

significant numbers of sedentary jobs. (Id.) Therefore, even if Mr. Brown, prior to the surgery, had been much more limited than is reflected in the ALJ's assessment of his residual functional capacity, there would still be sedentary jobs available to him.

The most particular objection made by Mr. Brown to the ALJ's opinion was the failure of the ALJ to specifically consider Dr. Sweeney's April 17, 1996 opinion. The Court first notes that this report was created roughly six months beyond the period for which Mr. Brown is now claiming benefits (his motion asks for benefits from February 1995 through October 1995) and therefore would not appear to be relevant to Mr. Brown's limited appeal. However, assuming it is relevant to the time period at issue, Mr. Brown has not explained how this report contradicts any of ALJ Lipe's findings. The report, in fact, states that Mr. Brown can walk unassisted, that he had a slightly reduced range of motion in his lumbosacral spine, that he can sit for periods of forty-five minutes, stand for periods of sixty minutes, lift twenty pounds or less, and carry forty pounds or less, and that he is not able to lift objects from below the waist. (R. 316-17.) None of these findings contradict the ALJ's assessment of residual functional capacity. As Mr. Brown has failed to explain how Dr. Sweeney's April 17th opinion necessitates a finding that he is disabled, the Court finds that Dr. Sweeney's April 17th report is not inconsistent with the ALJ's determination of residual functional capacity.

Therefore, the Court finds Mr. Brown's argument that the ALJ was required to separately assess Mr. Brown's residual functional capacity prior to his 1995 surgery to be without merit. The Court further finds that ALJ Lipe adequately articulated the reasoning which led to his determination that Mr. Brown had the residual functional capacity to perform a wide range of light and sedentary work, and that the sum of this evidence sufficiently supports the ALJ's finding that Mr. Brown was

not disabled.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED. The Clerk is directed to enter final judgment in favor of the Commissioner and against the Plaintiff in accordance with Rule 58 of the Federal Rules of Civil Procedure.

E N T E R:

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: Mar. 29, 2001