# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 816 | **DATE** | 10/12/2001 |
| **CASE TITLE** | Ricard Brown vs. Larry G. Massanari, Commissioner of | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)　☐ General Rule 21　☐ FRCP41(a)(1)　☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff's Motion to Alter or Amend the Judgment [14-1] is granted. This matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order. Upon remand the ALJ should consider whether Plaintiff was disabled during the closed period of June 2, 1994 through October 1995. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against the Commissioner pursuant to Federal Rule of Civil Procedure 58.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 1 5 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | DOCKETING | docketing deputy initials | 18 |
| | Copy to judge/magistrate judge. | 01 OCT 12 PM 5: 22 | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RICARD BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 00 C 816 |
| | ) | |
| LARRY G. MASSANARI[1], | ) | |
| Commissioner of Social Security, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant. | ) | |

DOCKETED

OCT 1 5 2001

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion to Alter or Amend the Judgment, filed on April 10, 2001, pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff claims that in this Court's March 29, 2001 Memorandum Opinion and Order affirming the Commissioner's final decision finding Plaintiff not disabled, this Court made a manifest error of law requiring the Court alter its judgment and find in favor of Plaintiff. Plaintiff argues that this Court erroneously considered Plaintiff's claim for Disability Insurance Benefits (DIB) under principles only applicable to claims for Supplemental Security Income (SSI) by failing to determine whether Plaintiff was entitled to a closed period of disability.[2] As explained below, the Court agrees that Plaintiff did

---

[1] Larry G. Massanari is substituted for his predecessors Kenneth Apfel and William Halter, as Secretary of Health and Human Services pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

[2] A plaintiff applying for benefits may be awarded DIB upon a determination that he was disabled during a discrete period of time, entitled a "closed period." SSI claimants cannot receive benefits for any period before their date of application. 20 C.F.R. § 416.335.

argue his entitlement to benefits during a closed period in his motion for summary judgment which this Court did not satisfactorily consider, and is therefore entitled to reconsideration of his motion. Upon reconsideration, the Court finds that the ALJ did not adequately address Plaintiff's entitlement to benefits during a closed period, and finds that this matter should be remanded to the Commissioner for further proceedings.

## I. Requirements of Federal Rule of Civil Procedure 59(e)

Because Plaintiff's motion was filed within ten days after entry of judgment, the motion is appropriately considered to be seeking to alter or amend the judgment pursuant to Federal Rule of Civil Procedure Rule 59(e) rather than Rule 60(b). See Doe v. Howe Military Sch., No. 99-3057, 2000 WL 1358731, at *11 (7th Cir. Sept. 11, 2000). Rule 59(e) "generally requires a lower threshold of proof than does 60(b)," Helm v. Resolution Trust Corp., 43 F.3d 1163, 1166 (7th Cir.1995), and "enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings." Russell v. Delco Remy Div. of Gen. Motors Corp., 51 F.3d 746, 749 (7th Cir.1995). In contrast, Rule 60(b) is an "extraordinary remedy." Id.

Rule 59(e) allows the movant to bring to the district court's attention a manifest error of law or fact, or newly discovered evidence. LB Credit Corp. v. Resolution Trust Corp., 49 F.3d 1263, 1267 (7th Cir.1995). It "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." Moro v. Shell Oil Co., 91 F.3d 872, 876 (7th Cir.1996).

2

## II. Analysis

### A. Plaintiff's Claim that the Court Erred in its March 29, 2001 Opinion

Plaintiff alleges that he was disabled from June 2, 1994 through October 1995, and that this Court (and the ALJ) erroneously failed to consider his claims for benefits during a closed period. Plaintiff claims that monthly DIB benefits may be paid for up to twelve months preceding the filing of a DIB application, and that there is, therefore, no requirement under DIB that the applicant be currently disabled. In responding to Plaintiff's motion, Defendant agrees that there is no requirement that Plaintiff establish current disability in order to receive DIB for an earlier period of time. (Def.'s Resp. at 1.) However, Defendant points out that the there must be a finding of disability before the provision allowing retroactive benefits is applicable, and that no such finding is warranted here. (Id. at 2.)

The Court agrees with Plaintiff that an individual may collect DIB under Title II which covers up to twelve months of disability prior to the filing of a DIB application, provided that he had insured DIB status during that period of disability. See 20 C.F.R. §§ 404.131, 404.315. Therefore, this Court erred in its March 29, 2001 Opinion, when it applied standards applicable to Supplemental Security Income (SSI), and held that Plaintiff had to establish a current disability in order to qualify for benefits. (March 29, 2001 Memorandum Opinion and Order, at 14.)

However, a DIB applicant bears the burden of demonstrating that he *is* disabled within the meaning of the Act on or before the date his insured status expired. Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993). Therefore, in evaluating whether Plaintiff is entitled to relief pursuant to his motion to reconsider, the Court must consider whether substantial evidence supported the ALJ's determination that Plaintiff had "not been under a disability as defined in the Social Security Act,

3

at any time from June 2, 1994, through the date of [his] decision." (R. 27.)

## B. The Court's Reconsideration of the ALJ's Decision Regarding Plaintiff's Claim for Disability Benefits

As the Court has determined that it should reconsider Plaintiff's claim for benefits during a closed period, it must now re-examine whether the ALJ's determination that Plaintiff was not disabled was based upon substantial evidence, according to the standards of 42 U.S.C. § 405(g). Judicial review of an ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 152 F.3d 636, 638 (7th Cir. 1998). Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence means "'more than a mere scintilla'" of proof, instead requiring "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Ehrhart v. Secretary of Health & Human Services, 969 F.2d 534, 538 (7th Cir. 1992) (citations omitted).

In this case, the ALJ determined that Plaintiff was not disabled, and therefore not entitled to benefits. The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. See 20 C.F.R. § 404.1520 (1998). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or

combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. See 20 C.F.R. § 404.1520 (1998); see also Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir.1992).

This Court adopts the portion of its March 29, 2001 Opinion which set forth the factual history of this case, (March 29, 2001 Memorandum Opinion and Order, at 5-12), however, a brief summary of the facts is helpful. In June 1994, Plaintiff was in a motor vehicle accident in which he sustained injuries to his back, right knee, left ankle, and left leg. Plaintiff continued to have complaints of pain in his right leg, right ankle, and back, and underwent surgery on his right knee in February 1995. In July 1995, Dr. Patrick Sweeney, an orthopedic surgeon, performed surgery on Plaintiff's back. In 1996 and 1997, Plaintiff underwent a series of evaluations, including a summary and evaluation generated by Dr. Sweeney in January 1997. The 1997 evaluation found that Plaintiff's surgeries were successful and that Plaintiff had been released for light work in February 1996.

The Court's March 29th Opinion also set forth the testimony of the vocational expert who responded to various hypotheticals posed by the ALJ and Plaintiff's counsel at the administrative hearing. As these hypotheticals play a large role in this Court's analysis, it is useful to set forth this Court's previous summary of the various hypotheticals posed to the vocational expert:

> [The vocational expert] was first asked to assume a thirty-two to thirty-six year old person with a high school education with the same work history as Mr. Brown's and an exertional capacity limited to a full range of light work with the following

exceptions. (R. 68.) The person may stand or walk for sixty minutes without interruption for a total of four hours in an eight hour work day. The person can sit for thirty to forty-five minutes without interruption for a total of fours hours in an eight hour work day. The person can never climb or balance, and may only occasionally stoop, crouch, kneel, or crawl. The person can only occasionally perform extended position reaching and pushing or pulling with the arms and legs. The person must also avoid temperature extremes, vibrations, and working at heights or around moving machinery. (Id.) The vocational expert testified that such a person would not be able to perform any skilled or semi-skilled jobs, but that there would be jobs at the light or sedentary exertional level such a person could perform. (Id.) These positions at the unskilled light level included cashier (900 jobs), inspector grader sorter (1200 jobs), and at the sedentary level included a sorter inspector (500 jobs), a ticket seller (700 jobs), and charge account clerk (500 jobs). (R. 68-69.) The vocational expert testified that a complete restriction from crawling or climbing would not change the answer to the previous hypothetical. (R. 69.)

The ALJ next changed the facts slightly and asked the vocational expert to assume the same facts in the first hypothetical including the complete restrictions from crawling or climbing, and to add that the person had the extra restriction of being unable to perform jobs requiring clear speech, and the person must avoid extended position reaching and pulling and pushing with arms and legs. (R. 69.) The vocational expert replied that this person would still be able to perform the inspection job and the sorter job. (R. 70.) The additional restriction of having limited vision in one eye did not affect the vocational expert's answer. (Id.)

Mr. Brown's attorney asked the vocational expert to assume all the facts from the last hypothetical, and add the following restrictions. The person can lift five pounds maximum continuously and ten pounds frequently, can do no repetitive work with the right foot, and has restricted driving. (R. 71.) The vocational expert testified that this would eliminate the light inspection position but that the person could still perform the sorting position. (Id.) The vocational expert also testified that if a person were limited from reaching in front of his body because repetitive reaching would create pain, that person would not be qualified for the sorting job. (R. 73.)

(March 29, 2001, Memorandum Opinion and Order at 9-10.)

Based in part on these hypotheticals posed to the vocational expert, the ALJ made findings with respect to Plaintiff's disability, as well as his ability to work in various jobs in the national economy, under Step 5 of the review process. The ALJ based his findings on the opinion of Dr. Sweeney who examined Plaintiff in March of 1997, and found that Plaintiff had the residual

functional capacity to perform the physical exertional and nonexertional requirements of light work, with the exception of:

> not lifting/carrying over 20 pounds occasionally and 10 pounds frequently; and the nonexertional restrictions of standing/walking for 60 minutes without interruption for a total of four hours out of any 8-hour workday; sitting for 30-45 minutes without interruption for a total of 4 hours; never climbing or balancing and only occasionally performing extended position reaching and pushing/pulling with arms and legs; and need to avoid temperature extremes, vibrations, working at heights and working around moving machinery.

(R. 26.) Based on these findings, the ALJ determined that Plaintiff could not perform his past relevant work, but that he had the functional capacity for the full range of light work, reduced by the nonexertional limitations previously listed. (R. 26.)

The ALJ did, however, consider the remaining hypotheticals posed to the vocational expert, each of which added further restrictions. The last hypothetical, offered by Plaintiff's counsel, incorporated all restrictions from previous hypotheticals, and added restrictions from lifting more than five pounds continuously and ten pounds frequently, any repetitive work with the right foot, and restrictions from driving. (R. 71.) The vocational expert testified that a person with these restrictions could still perform the sorting position (500 jobs). (Id.) However, the vocational expert also testified that if this person were further limited from reaching in front of his body because repetitive reaching would create pain, that person would not be qualified for the sorting job. (R. 73.) The vocational expert also testified that a person who required frequent rest breaks during the day which amounted to more than 10% of the workday would not be qualified for the sorting position. (R. 75-76.)

The ALJ found that none of the subsequent hypotheticals (which he labeled as hypotheticals B, C, and D) were supported by the record beyond his initial hypothetical (hypothetical A) because he found Dr. Sweeney's 1997 opinion to be the most reliable, which only supported the limitations

advanced in hypothetical A. The ALJ's opinion stated that the restrictions from hypotheticals B, C, and D, "do not state actual limitations which this claimant has or will have for a successive 12 month period of time." (R. 25.) However, the ALJ found that even if all of the restrictions from hypotheticals B, C, and D, were incorporated, Plaintiff would nevertheless not be disabled because he could still perform the sorter position. The ALJ discussed the two final limitations posed to the vocational expert, i.e., the limitation on reaching and the limitation requiring frequent rest breaks, and found that these limitations did not apply to Plaintiff.[3] (Id.) The ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from June 2, 1994 through the date of his decision. (Id.)

A reading of the ALJ's findings in light of Plaintiff's claim for benefits during the period of June 2, 1994 through October 1995, indicates that his decision was not supported by substantial evidence. Despite the fact that the ALJ did find that Plaintiff had not been under a disability from June 2, 1994 through the date of his decision, the Court finds that Plaintiff is correct that the ALJ failed to separately evaluate whether Plaintiff was disabled during the closed period of June 2, 1994 through October 1995.

Several factors support this Court's conclusion. The first is the ALJ's reliance on Dr. Sweeney's March 1997 summary opinion for the entire time period at issue. His use of Dr. Sweeney's 1997 opinion in determining which hypothetical most accurately reflected Plaintiff's

---

[3] Specifically, the ALJ stated: "Counsel also asked the vocational expert about a person who had to take unscheduled breaks from work and one who experienced so much pain from reaching that he had to stop working. There is no evidence that the claimant would have to take unscheduled breaks or would experience disabling pain if he were performing the occupations described by the vocational expert, which are well within the claimant [sic] RFC as stated by his treating physician." (R. 25.)

limitations demonstrates that the ALJ did not separately consider whether Plaintiff was disabled prior to and just after Plaintiff's July 1995 surgery. While Defendant points out that the ALJ's discussion earlier in his opinion included medical evidence from the period at issue, it is not clear from his later findings that he evaluated that evidence separately in order to determine if Plaintiff was disabled during the closed period. (Def.'s Resp. at 3.)

A second point which the Court found significant is the ALJ's statement in his findings that hypotheticals B, C, and D "do not state actual limitations which this claimant has or will have for a successive 12 month period of time." (R. 25.) From this statement, it appears that the ALJ was not separately taking Plaintiff's claim for benefits during a closed period into consideration. In fact, the ALJ's findings as to Plaintiff's medical condition are all present or future findings and do not consider his past medical history during the closed period. Defendant argues that the ALJ's specific finding that Plaintiff had not been under a disability at any time since June 2, 1994 supports this Court's previous conclusion that the ALJ considered the evidence applicable to the entire time period, including the medical evidence during the closed period. (Def.'s Resp. at 3.) However, if Plaintiff is correct, his medical condition during the closed period was distinctly different from his medical condition after the closed period, and an assessment which combined evidence from both periods would not have been sufficient.

A third reason for the Court's decision is the manner in which the ALJ addressed the testimony of the vocational expert that a person who could not engage in repetitive reaching in front of his body or who had to take frequent unscheduled breaks would not be qualified for the sorting job, which was the only job which remained if all of the limitations from hypotheticals B, C, and D were assumed. (R. 73.) If Dr. Sweeney's medical findings in 1997 did not accurately reflect Plaintiff's

medical limitations during 1994 and 1995 before and after his surgery, then hypotheticals B, C, and D, as well as the further limitations preventing repetitive reaching and requiring frequent breaks may in fact more accurately denote Plaintiff's restrictions during the closed period. Therefore, the opinion of the vocational expert that a restriction against repetitive reaching or a requirement of frequent breaks would eliminate all jobs, including the sorter position, could have significantly impacted the ALJ's findings. However, based upon the language in his opinion, it appears that the ALJ only considered whether Plaintiff currently had those limitations.[4]

Plaintiff, in his June 1, 2000 motion for summary judgment claimed that the ALJ's failure to specifically consider Dr. Sweeney's April 1996 opinion, which was closer in time to the period now at issue. (R. 315-421.) The Court also notes that Dr. Brown evaluated Plaintiff's condition in November 1996. (R. 422-27.) Should this or other evidence of Plaintiff's limitations between June 2, 1994 and October 1995 support a restriction against repetitive reaching or a requirement of frequent unscheduled breaks, the ALJ may be required to find Plaintiff disabled.

It is the Commissioner's burden to show at "step five" of the review process that the claimant could perform any work in the national economy consistent with his residual functional capacity. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). Books v. Chater, 91 F.3d 972, 979-80 (7th Cir.1996). In this case, the Court finds that the Commissioner did not meet this burden and that the ALJ's decision was therefore not based upon substantial evidence.

---

[4] The ALJ's use of the present and future tense when specifically discussing these limitations demonstrates his failure to consider if Plaintiff had these limitations in the past. The ALJ stated, as noted previously: "There is no evidence that the claimant would have to take unscheduled breaks or would experience disabling pain if he were performing the occupations described by the vocational expert, which are well within the claimant [sic] RFC as stated by his treating physician." (R. 25.) The ALJ was clearly considering these limitations only in terms of any present or future employment of Plaintiff.

## III. Conclusion

For the reasons stated above, Plaintiff's Motion to Alter or Amend the Judgment is GRANTED. This matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order. Upon remand the ALJ should consider whether Plaintiff was disabled during the closed period of June 2, 1994 through October 1995. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against the Commissioner pursuant to Federal Rule of Civil Procedure 58.

**ENTER:**

Nan R. Nolan
**United States Magistrate Judge**

Dated: 10-12-01