Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 816 | **DATE** | 4/22/2002 |
| **CASE TITLE** | Ricard Brown vs. Jo Anne Barnhart, Commissioner of Social Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff Ricard Brown's Motion for Attorney Fees Under the Equal Access to Justice Act [20-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | APR 23 2002 | 24 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| KMc | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RICARD BROWN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 00 C 816 |
| JO ANNE BARNHART, Commissioner of Social Security | ) ) ) | Magistrate Judge Nan R. Nolan |
| Defendant. | ) ) | |

DOCKETED
APR 2 3 2002

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Ricard Brown's Motion for Attorney Fees Under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). On October 15, 2001, the Court remanded Brown's application for disability insurance benefits, instructing the ALJ to consider whether Brown was disabled during the closed period of June 2, 1994 through October 1995. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the following reasons, the Court DENIES Brown's motion for attorney's fees.

### Background

This order presumes familiarity with the Court's previous opinions, *Brown v. Massanari*, 167 F. Supp. 2d 1015 (N.D. Ill. 2001), and *Brown v. Halter*, 154 F. Supp. 2d 1370 (N.D. Ill. 2001), however, a brief summary of the facts and procedural history is helpful.

Medical Evidence

On June 2, 1994, Brown was involved in a motor vehicle accident in which he sustained injuries to his back, right knee, left ankle and left leg. X-rays taken at that time did not shown any

-1-

acute injuries, although an x-ray of Brown's lower back indicated some degeneration of two intervertebral discs. A physician named Dr. Reddy examined Brown four times between June 1994 and February 1995. In a November 1994 report, Dr. Reddy recommended that Brown could return to work after a two-week "work hardening" program. The report also states that Brown became "quite hostile" when Dr. Reddy informed him that the MRI of his back revealed no disc herniation. In December 1994, Dr. Reddy reported that Brown had a very small right-sided herniated disc which was improving with physical therapy. Although an MRI of Brown's right knee taken at that time was negative, Dr. Reddy noted that the MRI might not show some of the problems which would be picked up by arthroscopic surgery. Dr. Reddy performed arthroscopic surgery on Brown's knee in February 1995.

In April 1995, Brown underwent a functional capacity evaluation to assess his ability to return to work. The rehabilitation specialist found that Brown performed the evaluation in an exaggerated manner with high-pain reports—specifically, the specialist noted that Brown exhibited very exaggerated pain behaviors and postures—and that Brown's lifting capacity was below light physical demands, but that he could "certainly upgrade to a greater lifting capacity . . . without causing any injury to himself." The specialist concluded that Brown would be able to tolerate the "work hardening" program easily.

In July 1995, Brown was admitted to a hospital with complaints of lower back pain. That same month, an orthopedic surgeon named Dr. Patrick Sweeney performed surgery on Brown's back. After his surgery, Brown underwent several evaluations. In February 1996, a physical therapist performed a function capacity evaluation of Brown. The physical therapist concluded that Brown could perform light work with certain limitations. That same month, Dr. Sweeney released Brown

to work subject to the restrictions listed in the evaluation. In November 1996, an orthopedic surgeon named Dr. Anthony Brown examined Brown. Dr. Brown concluded, among other things, that Brown could use both hands for repetitive action and that he could reach frequently. In January 1997, Dr. Sweeney wrote a letter summarizing his care of Brown. The letter noted that Brown reported a decrease in pain after his surgery. Dr. Sweeney opined that the July 1995 surgery was successful and that Brown could return to work but at a lower capacity than before. In March 1997, Dr. Sweeney filled out a physical capacity evaluation regarding Brown's abilities and limitations.

Procedural History

Brown applied for disability insurance benefits in March 1996, alleging that he became disabled on June 2, 1994 as a result of the automobile accident. After his claim was denied initially and again on reconsideration, Brown sought a hearing before an administrative law judge ("ALJ"). In addition to discussing the medical evidence described above, the ALJ received testimony from Brown and a vocational expert. The vocational expert was asked to opine about four hypothetical individuals—labeled A through D—each possessing increasing physical limitations. The expert testified that hypothetical individual A—who possessed approximately the same abilities and limitations listed in Dr. Sweeney's March 1997 evaluation of Brown—could be a cashier (900 jobs), an inspector grader sorter (1200 jobs), a sorter inspector (500 jobs), a ticket seller (700 jobs), or a charge account clerk (500 jobs). In hypothetical B, the ALJ added that the individual was completely restricted from crawling or climbing. The expert testified that individual B would be able to perform the same categories of jobs. The ALJ stated that the next hypothetical person had the same abilities and limitations as the previous two and added that he was unable to perform a job requiring clear speech and that he had to avoid extended position reaching or pushing and pulling with his arms or

legs. The expert opined that individual C could still perform the inspection and sorter jobs. Brown's attorney then asked the expert to consider an individual who possessed all the previous limitations and added that the individual can lift a maximum of five pounds continuously and ten pounds frequently, cannot perform repetitive work with his right foot and has restrictive driving ability. The expert testified that individual D could still perform the sorter job. The expert added that the individual in hypothetical D would not be qualified for the sorter position if he needed to take frequent rest breaks (defined as more than 10% of the workday) or if he could not repetitively reach in front of his body. The ALJ found that only the restrictions listed in hypothetical A were supported by the medical evidence. The ALJ added, however, that Brown would not be disabled even if he possessed all of the limitations from hypotheticals B through D because he could still perform the sorter position. The ALJ found that the final two limitations, i.e., the limitation on reaching and the need for rest breaks, did not apply to Brown. Based on the testimony and his findings, the ALJ determined that Brown retained the physical capacity to perform light work with some restrictions and that there were a significant number of jobs in the national economy which he could perform. Accordingly, the ALJ concluded that Brown had not been disabled, as defined by the Social Security Act, at any time from June 2, 1994 through the date of his decision. In September 1998, the Appeals Council of the Social Security Administration denied Brown's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

Brown brought an action to review the Commissioner's decision denying benefits under 42 U.S.C. § 405(g). Brown principally argued that the ALJ's finding was not supported by substantial evidence because the ALJ failed to separately consider whether Brown was disabled during the closed period of June 1994 to October 1995—the time period before and just after his back surgery.

According to Brown, the ALJ incorrectly relied on Dr. Sweeney's March 1997 physical capacity evaluation to support his conclusion that Brown had not been disabled at any point from June 1994 to the time of his decision. This Court granted the Commissioner's motion for summary judgment, reasoning that Brown would have to show a current disability before he could recover retroactive benefits. *Brown*, 154 F. Supp. 2d 1370. Pursuant to Federal Rule of Civil Procedure 59(e), Brown moved the Court to alter or amend its judgment, arguing that a claimant need not show a current disability to receive retroactive benefits. The Commissioner conceded this point but argued that the ALJ properly concluded that Brown was disabled for both the period before and the period following his back surgery. The Court granted Brown's motion and remanded the matter to the ALJ, concluding that, although the ALJ discussed medical evidence from both before and after Brown's back surgery, "it [was] not clear from [the ALJ's] later findings that he evaluated the [earlier] evidence separately in order to determine if Plaintiff was disabled during the closed period." *Brown*, 167 F. Supp. 2d at 1020.

**Legal Standard**

Under the EAJA, a district court may award attorney's fees where (1) the claimant is a "prevailing party"; (2) the government's position was not substantially justified; (3) no "special circumstances make an award unjust"; and (4) the fee application is submitted to the court within 30 days of final judgment and is supported by an itemized statement. 28 U.S.C. § 2412(d)(1)(A), (B); *United States v. Hallmark Constr. Co.*, 200 F.3d 1076, 1078-79 (7th Cir. 2000). In this case, it is uncontested that Brown is a "prevailing party," that the fee application was timely filed, and that there are no "special circumstances" that would make an award unjust. Accordingly, the Court's inquiry focuses solely on the issue of whether the government's position was substantially justified.

According to the Supreme Court, the government's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988). The government bears the burden of establishing that its position was substantially justified. *Hallmark*, 200 F.3d at 1079. In making a substantial justification determination, a district court should consider both the government's prelitigation conduct as well as the government's conduct relative to the instant litigation. *Jackson v. Chater*, 94 F.3d 274, 278 (7th Cir. 1996); *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994). However, the court makes only one determination for the entire civil action. *Hallmark*, 200 F.3d at 1081; *Jackson*, 94 F.3d at 279-80; *Marcus*, 17 F.3d at 1036; *Cummings v. Sullivan*, 950 F.2d 492, 496 (7th Cir. 1991). The government's position can be substantially justified even though it is incorrect. *Pierce*, 487 U.S. at 569 (stating that "[the government] could take a position that is substantially justified, yet lose").

**Discussion**

The Court concludes that the government's position during the entirety of this civil action has been substantially justified. The government's prelitigation position was that Brown was not disabled at any point from June 1994 through February 1998—the date of the ALJ's decision. The Court concludes that the medical evidence in the record establishes that the government's decision to deny benefits was at least substantially justified. The Court notes that Brown did not challenge the ALJ's determination that he was not disabled for the period following his back surgery—October 1995 to February 1998. Based on the medical evidence and the vocational expert's testimony, the Court concludes that the government had a rational basis to argue that Brown was not disabled during this period. Regarding the period preceding his surgery, the Court concludes that the

government could have rationally argued that Brown was not disabled. Dr. Reddy's November 1994 report recommended that Brown could return to work after a two-week "work hardening" program and an April 1995 functional capacity evaluation states that Brown could upgrade to a higher lifting capacity without injuring himself. These two documents also raise the possibility that Brown may have been exaggerating his injuries. Dr. Reddy's report states that Brown became "quite hostile" when he was informed that the MRI of his back revealed no disc herniation and the April evaluation states that Brown exhibited very exaggerated pain behaviors and postures. Although the Court takes no position on whether this evidence would be sufficient to support a determination that Brown was not disabled during the period preceding his back surgery, the Court concludes that this evidence provides a rational basis for the government's position. *See Kolman v. Shalala*, 39 F.3d 173, 177 (7th Cir. 1994) (stating that "[t]he test for substantial justification is whether the agency had a rational ground for thinking it had a rational ground for its action").

During litigation, the parties' arguments focused on whether the ALJ failed to separately consider whether Brown was disabled during the closed period of June 1994 to October 1995. In support of its argument that the ALJ considered the entire period from June 1994 to February 1998, the government correctly pointed out that the ALJ (1) discussed the pre-October 1995 evidence, (2) instructed the vocational expert to consider an individual who was thirty-two to thirty-six years old (Brown was thirty-two years old at the time of the accident), and (3) specifically found that Brown had not been under a disability at any time since June 2, 1994. Although the Court ultimately rejected the government's arguments, the Court concludes that these three points provided the government with a rational basis for its position. *See id.* Moreover, even if the Court were to conclude that the government's litigation position on this issue lacked a reasonable basis, being

incorrect on this issue does not translate into a finding that the government's overall position lacked substantial justification. *Jackson*, 94 F.3d at 279-80; *Smith v. Barnhart*, No. 00 C 2643, 2002 WL 126107, at *5 (N.D. Ill. Jan. 31, 2002) (stating that a "finding that the [ALJ's] opinion was not supported by substantial *evidence* . . . does not automatically require a finding of a lack of substantial *justification*") (emphasis in original). For example, in *Crowder v. Massanari*, No. 00 C 5645, 2001 WL 1356142, at *1 (N.D. Ill. Oct. 30, 2001), the court determined that the plaintiff was not entitled to attorney's fees under the EAJA even though the court had remanded the case to the ALJ. The *Crowder* court explained that it remanded the case because the ALJ was not sufficiently clear as to whether he considered certain evidence—the court specifically noted that it did not hold that the available evidence was insufficient to support the ALJ's determination that the claimant was not disabled. *Id.* This case is similar. In this case, the Court did not hold that the medical evidence was insufficient to support a determination that Brown was not disabled during the closed period of June 1994 to October 1995. Rather the Court held that the ALJ's decision was not sufficiently clear as to whether "he evaluated the [earlier] evidence separately in order to determine if Plaintiff was disabled during the closed period." *Brown*, 167 F. Supp. 2d at 1020.

## Conclusion

For the foregoing reasons, the Court concludes that the government was substantially justified in defending the ALJ's determination that Brown was not disabled at any point from June 2, 1994 through February 1998. Accordingly, the Court DENIES Brown's motion for attorney's fees.

ENTER:

*(signed)* Nan R. Nolan

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: APR 2 2 2002